PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | CASE NO. 5:18CR265 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| CHARLES FORTNEY, ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Defendant. ) | **ORDER** |
| ) | [Resolving ECF No. 8] |

Pending before the Court is Defendant Charles Fortney's Motion to Suppress. ECF No. 8. The Government has responded. ECF No. 9. On July 23, 2018, the Court heard oral argument.[1] At the hearing, the Court ruled that Defendant's motion was denied. Additional reasons for the denial are as follows.

## I. Background

Defendant worked at the ALDI warehouse in Hinckley, Ohio until March 5, 2018. On that morning, Michael Aschbrenner, director of the warehouse, confronted Defendant about complaints that Defendant was harassing a female co-worker. While investigating the complaints against Defendant, Aschbrenner heard a rumor that Defendant kept a gun in the

---

[1]Prior to the hearing before the Court, Defendant filed a motion to suppress in a state court case related to these events. When filing his motion to suppress before the Court, Defendant attached the transcript from the state court proceedings. ECF No. 8-1. The parties agreed that the transcript sufficiently laid out the facts with one caveat: Defense counsel noted that Defendant's car keys were in his backpack.

backpack he brought to work each day. Bringing a gun into the workplace is against ALDI policy.

Therefore, Aschbrenner was cautious about confronting Defendant, so he called in the Hinckley Police Department to conduct a standby assist.[2] Three officers arrived to perform the standby assist: Sergeant Bruce Linville, Patrolman James Ascherl, and Patrolman Jeffrey Kinney.

When Aschbrenner met with Defendant, John King, Defendant's immediate supervisor, was also present. The three individuals met in Aschbrenner's office behind closed doors. During the meeting, the officers were in an adjacent room. At the meeting, Aschbrenner decided to fire Defendant.

After Aschbrenner informed Defendant that he was being terminated, Aschbrenner told Defendant that he was going to search Defendant's backpack to see if it contained a gun. Defendant objected to the search of his locker and backpack. The three police officers who were there on the standby assist went to the locker room with Aschbrenner and Defendant.

Once at the locker, Aschbrenner asked Defendant to unlock his locker. Defendant complied. Defendant was free to leave, but, were he to leave, he would have had to leave his backpack in the locker room for Aschbrenner to conduct his search. Aschbrenner searched the compartments of Defendant's backpack. The police officers did not search the backpack, but Patrolman Ascherl was standing near the locker. And, Defendant felt that the other officers were

---

[2] Patrolman Ascherl testified that standby assists occur most often in domestic situations when spouses or former spouses are exchanging items or removing items from a residence. ECF No. 8-1 at PageID #: 71.

(5:18CR265)

blocking his path to leaving the room. Defendant's backpack contained Defendant's wallet and keys, but Defendant did not ask for his keys at any point during the exchange.

While in the locker room, law enforcement officers asked Defendant questions. First, Sergeant Linvlle, one of the officers asked Defendant if the backpack contained a gun. Defendant answered in the negative, but noted that there was one .45 bullet casing in the backpack. Sergeant Linville also asked Defendant if he had a conceal carry permit. Defendant said that he did, and that the permit was in his wallet. During his search of Defendant's backpack, Aschbrenner found Defendant's wallet. Aschbrenner handed the wallet to Defendant, and Defendant handed his concealed carry permit to the police.

Upon opening one of the pockets in the backpack, Aschrenner saw what he thought was a gun. He alerted the officers, and Patrolman Ascherl removed the weapon from the backpack. The weapon was a Kel Tec model PLR-16, 5.56mm. The backpack also contained three loaded thirty-round magazines.

Defendant was indicted on one count: a violation of 26 U.S.C. § 5861(d), receiving or possessing firearm not registered in the national firearm registration. Defendant has filed his motion to suppress (ECF No. 8), arguing that the actions of Aschbrenner and the Hinckley police officers amounted to a warrantless search in violation of the Fourth Amendment. He seeks to suppress the all evidence and statements obtained from the search of his backpack.

## II. Discussion

The parties dispute whether the events the actions of Aschbrenner and the police implicate the Fourth Amendment. Specifically, Defendant contends that he was seized by the

3

(5:18CR265)

police officers and that Aschbrenner's actions, in tandem with the police, constitute a private citizen engaging in state action. ECF No. 8 at PageID #: 36-41. In response, the Government asserts that, although the officers were present, they did not undertake any act that transformed Aschbrenner's private action into state action. ECF No. 9 at PageID #: 128-31. The Government also maintains Defendant was free to leave at any time, albeit without his backpack.

The Fourth Amendment, which protects against unreasonable searches, "is understood to refer to searches by, or made possible by, government officers." United States v. Booker, 728 F.3d 535, 540 (6th Cir. 2013).

The Sixth Circuit has held that "a private entity can be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." Lansing v. City of Memphis, 202 F.3d 821, 828 (6th Cir. 2000) (citation omitted). In determining whether private action crossed the plane into state action, the Sixth Circuit has applied three tests: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. Id. (citation omitted). The parties have agreed that the state compulsion test and the symbiotic relationship or nexus tests apply. In addition, when analyzing private citizen searches, the Sixth Circuit has applied a two-factor agency test. United States v. Bowers, 594 F.3d 522, 525-26 (6th Cir. 2010).

**A. State Compulsion Test**

Under this test, for an act to amount to state action, the state must "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." Wolotskly v. Huhn, 960 F.2d 1331, 1335 (6th

4

(5:18CR265)

Cir. 1992) (citation omitted). The state's involvement must exceed "mere approval or acquiescence" of the private actor's action. *Id*.

In this case, Defendant has not shown state compulsion. At the state court suppression hearing, Aschbrenner testified that he had made the decision to search Defendant's backpack because of the rumor he had heard about Defendant bringing a gun to work. ECF No. 8-1 at PageID #: 53. Aschbrenner also testified that he requested police attendance in case he needed protection, not for the police to conduct a search. *Id*. Similarly, Patrolman Ascherl testified that he was only at the ALDI warehouse in case things "got out of hand."[3] *Id.* at PageID #: 82. Both accounts support the conclusion that the Hinckley police officers were doing what Aschbrenner asked of them: stand by while Aschbrenner unilaterally carried out his intentions.

Defendant contends that the police officers "exercised coercive power" by not allowing Defendant to retrieve his possessions and leave. ECF No. 8 at PageID #: 40. This argument is belied by the record. Both Aschbrenner (ECF No. 8-1 at PageID #: 67) and Patrolman Ascherl (ECF No. 8-1 at PageID #: 74) testified that Defendant was free to leave the building, albeit without his backpack. Defendant does not deny this. Rather, he rejoins that his keys were in his backpack, rendering him unable to leave as a practical matter. Defendant, however, did not ask for his keys. Had he asked for his keys and been denied them, Defendant's claim that he was seized would be stronger, but his failure to ask proves fatal.

---

[3] That the officers obstructed Defendant's path to his locker does not change the analysis. In doing so, they were merely performing their responsibility by preventing the situation from escalating. During the summation before the undersigned, defense counsel acknowledged that had the police not been present, Defendant would have grabbed his backpack from Aschbrenner.

5

(5:18CR265)

Thus, Defendant has failed to show state action under the state compulsion test.

### B. The Symbiotic Relationship or Nexus Test

To constitute state action under this test, the private party's actions must bear "a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335. This test is fact-dependent, therefore, courts have employed various factors to determine if a sufficient nexus exists. None are dispositive. *Lansing*, 202 F.3d at 830. These factors include, but are not limited to, the following: (1) state regulation, (2) public funding or private use of public property; (3) approval or acquiescence of the state in private activity; and (4) the use of public services by private actors. *Id.* at 830-31 (citation omitted).

In this case, Defendant cannot satisfy this test for similar reasons to why Defendant did not satisfy the state compulsion test. The three officers on site did not play an active role in the search. That one of the officers asked Defendant whether he had a concealed carry permit does not mean that the officers were then actively engaged in Aschbrenner's search in Defendant's backpack. At most, there is acquiescence on the part of the Hinckley Police Department.

Defendant invokes *Hensley v. Gassman*, 693 F.3d 681 (6th Cir. 2012) as support. This argument does not persuade. *Hensley* does not prove comparable to this case, as the defendants in *Hensley* took a much more active role than the officers in this case. In *Hensley*, the defendants' actions included the following: (1) ordering a private entity defendant to tow a car; (2) breaking a car window; (3) removing one of the plaintiffs from the car; and (4) ordering that same plaintiff to remove her belongings from the car. *Id.* at 691-92. In this case, the Hinckley

6

(5:18CR265)

police officers have done nothing similar. They did not order Aschbrenner to search Defendant's backpack, nor did they force Defendant to stay while his bag was being searched. Thus, *Hensley*, is distinguishable.

Accordingly, Defendant has not established a sufficient nexus between Ashcbrenner and the Hinckley Police Officers to implicate the Fourth Amendment.

**C. Agency Test**

In addition to the tests on which the parties rely, the Sixth Circuit has applied a two-factor agency test to determine whether a private citizen search raises Fourth Amendment concerns. The two factors are as follows: (1) the government's knowledge or acquiescence to the search; and (2) the intent of the party that performed the search. *Bowers*, 594 F.3d at 525-26 (quotation omitted). Under this test, if "the intent of the private party conducting the search is entirely independent of the government's intent to collect evidence for use in a criminal prosecution ... the private party is not an agent of the government." *United States v. Hardin*, 539 F.3d 404, 418 (6th Cir. 2008) (quotation omitted).

Like the other tests, suppression is improper under the agency test. The first factor is met, as the officers had knowledge of the search. The second factor, however, is not met. Aschbrenner testified that his intent in searching the backpack was for his purposes. ECF No. 8-1 at PageID #: 64. He also testified that he only asked the police to be on site for safety concerns. *Id.* at PageID #: 53. Aschbrenner admitted that he wanted to show the officers that Defendant did not have a gun, but this is not enough to say that Aschbrenner's intent was connected to any governmental intent to collect evidence. *Id.* at PageID #: 64. And, there is no evidence that the

7

(5:18CR265)

Hinckley police officers were present to collect evidence.  As Patrolman Ascherl testified, their intent was to perform a standby assist and ensure the situation did not escalate.  *Id.* at PageID #: 82.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion to Suppress is denied.

IT IS SO ORDERED.

   July 26, 2018                                           */s/ Benita Y. Pearson*
Date                                                        Benita Y. Pearson
                                                                  United States District Judge